## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEVIN D. KENT, in his capacity as Receiver for Broad Reach Capital, LP, Broad Reach Partners, LLC, Bristol Advisors, LLC, CV Investments LLC, Investment Consulting LLC, and TA 1 LLC, 1500 Market Street, Suite 3900, West Tower, Philadelphia, PA 19102-1921,** | **Civil Action No. _____** |
| | **Jury Trial Demanded** |
| **Plaintiff,** | |
| **v.** | |
| **EMPEROR GLOBAL ENTERPRISES LLP, Sterling House, Fulbourne Road, Walthamstow, London E17 4EE,** | |
| **and** | |
| **EGE LIMITED, Sterling House, Fulbourne Road, Walthamstow, London E17 4EE,** | |
| **and** | |
| **MICHAEL P. MICHAEL, Sterling House, Fulbourne Road, Walthamstow, London E17 4EE,** | |
| **and** | |
| **GEORGIA IACOVOU, Sterling House, Fulbourne Road, Walthamstow, London E17 4EE,** | |
| **Defendants.** | |

## COMPLAINT

## INTRODUCTION

1.      This action is brought pursuant to a June 29, 2020 Order (the "Receivership Order") issued by the Honorable Madeline Cox Arleo, United States District Judge for the District of New Jersey, in the underlying action brought by the Securities and Exchange Commission ("SEC" or the "Commission") against Defendants Brenda Smith ("Smith"), Broad Reach Capital, LP ("Broad Reach Fund" or the "Fund"), Broad Reach Partners, LLC ("Partners"), and Bristol Advisors, LLC ("Bristol") (collectively, the "Smith Defendants"), styled *Securities and Exchange Commission v. Smith*, *et al.*, Civil Action No. 19-17213 (the "SEC Action").  True and correct copies of the SEC Complaint and the Receivership Order are attached hereto as Exhibit "A" and Exhibit "B," respectively.

2.      The SEC Action arises out of an investment advisory fraud in which, *inter alia*, the Smith Defendants solicited over $100 million from investors for purported investment in sophisticated securities trading strategies. In reality, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

2

3.      The fraud was perpetrated by the Smith Defendants directly and through numerous affiliated entities owned or controlled by one or more of the Smith Defendants (referred to in the Receivership Order as the "Affiliated Entities").

4.      The Smith Defendants and Affiliated Entities operated out of offices in West Conshohocken, Pennsylvania.

5.      Smith is also being criminally prosecuted for her conduct. The government filed its criminal complaint against Smith on August 22, 2019 in the matter of *USA v. Smith*, No. 2:20-cr-00475-MCA-1 (D.N.J.) (the "Criminal Action"). The SEC Action is ongoing, but currently subject to a stay pending the completion of the Criminal Action. Under the terms of the stay order all orders relating to the Receivership and all powers granted to the Receiver remain in full force and effect during the pendency of the stay.

6.      Plaintiff Kevin D. Kent was appointed under the Receivership Order as the receiver ("Receiver" or "Plaintiff") with the goal and purpose to investigate, marshal, and preserve, *inter alia*, the assets, monies, securities, choses in action, and properties of the Smith Defendants and the Affiliated Entities to maximize the recovery available to the investors defrauded by Smith. This includes assets that are (1) attributable to assets derived from investors or clients of the Smith Defendants; (2) are held in constructive trust for the Smith Defendants; (3) were fraudulently transferred by the Smith Defendants; and/or (4) may otherwise be included as assets

of the estates of the Smith Defendants or Affiliated Entities (collectively referred to as "Receivership Assets" or "Receivership Estate").

7.     In the Receivership Order, the Court took exclusive jurisdiction and possession of the Receivership Assets, including, but not limited to, assets of the following Smith Defendants and Affiliated Entities: the Fund; the Partners; Bristol; BA Smith & Associates LLC; Bristol Advisors LP; CV Brokerage, Inc; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investments LLC; Investment Consulting LLC; and Tempo Resources LLC, (collectively, the "Receivership Parties").

8.     Receiver asserts this action to recover, and avoid the fraudulent transfer(s) of, Receivership Assets made by certain of the Receivership Parties to and/or on behalf of Defendants, under theories of fraudulent transfer, unjust enrichment, and breach of contract. The Receiver also demands an accounting from Defendants, including but not limited to all funds transferred by the Receivership Parties to them, for their benefit, on their behalf, or at their request, in whatever form.

## PARTIES

9.     Under the Receivership Order, Receiver is a representative of this Court with the full powers of an equity receiver.

4

10.     The Receivership Order authorizes Receiver to institute legal proceedings on behalf of and for the benefit of the Receivership Estate as may be necessary or appropriate in order to recover, conserve, or maximize Receivership Assets, including, *inter alia,* actions seeking legal or equitable or legal relief, to avoid fraudulent transfers, to collect debts, for disgorgement of profits, for creation of a constructive trust, for asset turnover, and such other relief as this Court may deem necessary to enforce the Receivership Order. *See* Ex. "B", ¶¶ 50-51. Receiver is specifically authorized to pursue actions to recover Receivership Assets from third parties, such as the recipients of funds from the Receivership Parties.

11.     Defendant Emperor Global Enterprises LLP ("EGE") is a legal entity with a business address and/or registered office at Sterling House, Fulbourne Road, Walthamstow, London, E17 4EE, United Kingdom.

12.     EGE claims that it "is a company that is an international funding facilitator for a wide variety of projects including, [f]unding projects through Bank Guarantees, Financial Instruments and Precious Metals and Natural Resources." *See* Screenshot of EGE website, attached as Exhibit "C," at p. 9.

13.     EGE advertises that it facilitates projects internationally through a network of experienced professionals specializing in researching, identifying, qualifying, and obtaining funding for entrepreneurs, humanitarians, and non-profits. *See* Ex. C, p. 6.

14.     EGE advertises that it has done past and present business in the United States through its network of associates and clients. *See* Ex. C, pp. 12-13.

15.     EGE advertises on its website that it maintains a USA Office with a telephone number bearing a New Jersey area code. *See* Ex. C, pp. 14-15.

16.     Defendant EGE Limited ("EGE Ltd.") is a legal entity with a business address and/or registered office at Sterling House, Fulbourne Road, Walthamstow, London, E17 4EE, United Kingdom.

17.     Upon information and belief, EGE Ltd. is closely affiliated with EGE, is under the same control as EGE, and engages in business in the United States alongside EGE.

18.     Defendant Michael P. Michael ("Michael") is an individual with a business address of Sterling House, Fulbourne Road, Walthamstow, London, E17 4EE, United Kingdom.

19.     Michael is and/or was the Chief Executive Officer of EGE and has and/or had at least a 50% membership/ownership interest in EGE at all time relevant times.

20.     Michael is and/or was the Director and sole officer and shareholder of EGE Ltd. at all relevant times, either directly or through Britcyp Group Limited, another entity in which he possesses an ownership/membership interest.

21.     Michael is essentially the alter-ego of EGE and EGE Ltd. and

personally engaged in all of the conduct of EGE and EGE Ltd. as alleged in this Complaint.

22.     Defendant Georgia Iacovou ("Iacovou") is an individual with a business address of Sterling House, Fulbourne Road, Walthamstow, London, E17 4EE, United Kingdom.

23.     Iacovou is a director of EGE and has and/or had at least a 50% membership/ownership interest in EGE at all time relevant times.

24.     Iacovou is a member and/or shareholder in EGE Ltd. through Britcyp Group Limited, another entity in which he possesses an ownership/membership interest along with Michael.

25.     On June 29, 2021, Receiver filed a motion for permission to file this action against Defendants.

## JURISDICTION AND VENUE

26.     Federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the federal securities laws pursuant to 15 U.S.C. §§ 77v(a) and 78aa, laws at issue in the SEC Action.

27.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367, as Receiver brings this action to accomplish the objectives of the Receivership Order entered in the SEC Action, and as such this action forms part of the same case or controversy as the SEC Action.

28.     Under the Receivership Order, this Court retains exclusive jurisdiction over and possession of the Receivership Assets.

29.     This Court also has jurisdiction over this action under 28 U.S.C. §§ 754 and 1692. Receiver has filed copies of the Receivership Order with the United States district court in each federal judicial district. As a result of those filings, Receiver is vested with complete control over any real or personal property of the Receivership Estate located in any federal judicial district, with the right to take possession of such property.

30.     Additionally, Defendants conduct business in the United States, maintain a United States presence, and, upon information and belief, maintain an office in the state of New Jersey. Further, EGE, through Michael, agreed to be subject to the jurisdiction of courts in the United States and to be subject to United States law in the Commonwealth of Virginia in any action arising from its dealings with Smith.

31.     Venue is proper in this Court under 28 U.S.C. §§ 754, 1391(b), and 1692.

32.     Venue is also proper as EGE, through Michael, has waived any objection to venue in the United States for all claims arising out of its dealings with Smith.

8

## FACTUAL BACKGROUND

### The Fraudulent Scheme

33.     Smith, through the Fund, the Partners, and Bristol, offered limited partnership interests in the Fund to investors beginning in early 2016.

34.     Since the Fund's inception, Smith raised approximately $100 million from investors, and investors are still owed approximately $60 million in principal.

35.     To solicit and retain investors, the Smith Defendants represented that the Fund employed several profitable, sophisticated trading strategies involving highly liquid securities, including those that it was uniquely positioned to pursue because of its access to the Philadelphia Stock Exchange trading floor.

36.     In reality, only a small fraction of investor money was actually used for these strategies. The vast majority of the funds were moved through bank accounts Smith controlled, funneled into unrelated companies, used to pay back other investors, or utilized for Smith's personal use.

37.     Smith's fraudulent misappropriation and misuse of investors' funds caused the Receivership Parties to suffer harm which the Receiver seeks to redress under Court authority.

38.     Smith was able to conceal her fraudulent misappropriation and mishandling of investor funds through numerous misrepresentations to investors and others, including, *inter alia*, by generating and providing false performance

statements and fabricated documents regarding the Fund's assets and valuations.

**Transfer of Receivership Assets to Defendants**

39.     Over the following series of transactions, Smith transferred $1,429,755.00 in Receivership Assets for the benefit of EGE, EGE Ltd., Michael, and Iacovou:

          a.     On or about March 1, 2017, Smith caused $543,850.00 USD to be transferred to EGE from TA 1, LLC ("TA 1").

          b.     On or about April 27, 2017, Smith caused $471,695.00 USD to be transferred to EGE from TA 1.

          c.     On or about September 8, 2017, Smith caused $414,210.00 USD to be transferred to EGE and/or EGE Ltd. from Investment Consulting LLC ("Investment Consulting").

40.     Upon information and belief, TA 1 and/or Investment Consulting did not receive anything in exchange for the transfer of this $1,429,755.00 in Receivership Assets.

41.     Upon information and belief, EGE, EGE Ltd., Michael, and Iacovou did not provide Smith and/or the Receivership Parties with any service of reasonably equivalent value to the transfers.

42.     Indeed, Michael has admitted that with respect to EGE's business relationship with Smith: "at the end of the day . . . nothing came to fruition . . . [and]

it was all a waste of time . . . ."

43.     The March 1, 2017 transfer of $543,850.00 (approximately 500K Euros) was issued pursuant to a February 28, 2017 payment invoice from EGE. *See* Payment Invoices, attached as Exhibit "D."

44.     The February 28, 2017 payment invoice does not specify the services EGE would perform for Smith in consideration for the payment; however, upon information and belief, this payment was meant "to support various transactions, including projects that require monetary investment programs which will include, but are not limited to, multiple development projects and other financial investment programs and also the purchase of financial instruments[,]" none of which ever came to fruition.

45.     Smith signed the February 28, 2017 payment invoice as a "Director" of Clearview Investments LLC ("CILLC"), which, upon information and belief, is a fictitious name for Receivership Party CV Investments LLC.

46.     Michael signed the February 28, 2017 payment invoice on behalf of EGE.

47.     The April 27, 2017 transfer of $471,695.00 (approximately 350K Sterling Pounds) was issued pursuant to an April 19, 2017 invoice from EGE. *See* Ex. "D."

48.     The April 19, 2017 payment invoice states that the payment is being

11

made "for services that are specified in section '16' of the Joint Venture Agreement that was signed by and between EGE and CILLC."

49.     Smith signed the April 19, 2017 payment invoice as a "Director" of CILLC.

50.     Michael signed the April 19, 2017 payment invoice on behalf of EGE.

51.     The September 8, 2017 transfer of $471,695.00 (approximately 300K Sterling Pounds) was issued pursuant to a September 18, 2017 payment invoice from EGE Ltd. *See* Ex. "D."

52.     The September 18, 2017 payment invoice states that the payment is being made "to retain the services of EGE Ltd."

53.     Smith signed the September 18, 2017 payment invoice as a "Director" of CILLC.

54.     Michael is designated as the signatory for EGE Ltd. on the September 18, 2017 payment invoice.

55.     Through its accountant, EGE has represented to Receiver that EGE Ltd is under the same control as EGE. *See* Accountant Letter, attached as Exhibit "E."

56.     To the extent these transfers were loans and/or investments, financial records and books belonging to the Receivership Parties and/or Smith provide no indication that any of this money was ever repaid to Smith or the Receivership Parties.

57.    To the extent these payments were for services, upon information and belief, those services were either never provided or incomplete.

58.    Based upon Michael's own admissions, none of the business endeavors for which payments were made and/or initiated by Smith ever came to fruition.

59.    Financial records indicate that EGE realized an operating profit of £857,034 (equivalent to approximately $1,215,940.13 at that time) during the calendar year when these transfers were made—which, upon information and belief, is the only time that EGE realized **any** operating profit in its 8-year existence. *See* EGE Public Financial Statements, attached as Exhibit "F."

60.    EGE's accountant has stated that the above-referenced transfers were declared as income in the year ending January 31, 2018 for which the members of EGE were taxed.

61.    Records provided by Michael demonstrate that Michael personally declared £430,449 in partnership profit on his personal income tax return for the 2017 tax year.

62.    Upon information and belief, the remaining operating profit from the tax year ending January 31, 2018 was distributed by EGE to its only other member, Iacovou.

63.    Accordingly, TA 1 and/or Investment Consulting conferred a benefit on Michael and/or Iacovou by disbursing the $1,429,755.00 to EGE and/or EGE Ltd.

64.     The transferred funds were derived directly or indirectly from investments made by investors in the Fund.

65.     Before his appointment, Receiver could not have reasonably discovered any claim against EGE, EGE Ltd., Michael, and/or Iacovou relating to and/or arising from the transfers caused by Smith to EGE and/or EGE Ltd.

66.     Further, after Receiver's appointment and after receiving notice of the Receivership Order, EGE and Michael denied to Receiver that they held any assets or funds of the Receivership Parties or Smith.

67.     Any temporal limitations, statutory or otherwise, on Receiver's ability to bring the causes of action set forth in this Complaint are subject to equitable tolling as a result of, among other things, the discovery rule and the doctrine of fraudulent concealment.

## COUNT I (against all Defendants)
## Action to Avoid Fraudulent and Voidable Transfer

68.     Receiver incorporates paragraphs 1 through 67 of this Complaint as if set forth at length herein.

69.     As set forth above, TA 1 and Investing Consulting made payments and/or distributions to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou.

70.     All transfers of TA 1 and/or Investment Consulting assets to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou were

14

fraudulent and voidable transfers within the meaning of the Pennsylvania Uniform Voidable Transactions Act, 12 Pa. C.S.A. § 5101, et seq., the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 et seq., and/or any other similar statutes of other jurisdictions.

71.     Smith caused the transfer of assets to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou during the course of her operation of a fraudulent scheme.

72.     Because Smith operated TA 1 and/or Investment Consulting as part of a fraudulent investment scheme, all transfers of TA 1 and Investment Consulting assets to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou were made with actual intent to hinder, delay and/or defraud the Receivership Entities' creditors and/or debtors, and are fraudulent and voidable.

73.     When the transfers were made to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou, Smith was operating TA 1 and/or Investment Consulting as part of a fraudulent investment scheme intending to incur, or believing or reasonably believing that the Receivership Parties would incur, debts beyond their ability to pay them as they became due.

74.     The Receivership Parties were insolvent or became insolvent shortly after and/or as a result of the transfers made and were unable to pay their debts as they became due.

75.     EGE, EGE Ltd., Michael, and/or Iacovou participated in the fraudulent transactions at issue as they received the benefit of the transfers as the money was distributed to them as profit.

76.     EGE, EGE Ltd., Michael, and/or Iacovou did not take the fraudulent transactions in good faith, and did not provide any reasonably equivalent value to the Receivership Parties or any subsequent transferee or obligee in exchange for these transfers.

77.     The Receivership Parties received no consideration, or inadequate consideration, for the transfers made for the benefit of EGE, EGE Ltd., Michael, and/or Iacovou.

78.     Receiver is entitled to avoid the fraudulent transfers of assets from TA 1 and/or Investment Consulting to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and/or Iacovou to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against EGE, EGE Ltd., Michael, and Iacovou avoiding, setting aside, and requiring repayment of the transfers made by TA 1 and Investment Consulting to, for the benefit of, or at the request of EGE, EGE Ltd., Michael, and Iacovou, as well as an attachment or other appropriate remedy against the assets transferred or other property of EGE, EGE Ltd., Michael, and Iacovou. To the extent the funds have

16

been used to acquire real or personal property in which EGE, Michael, and/or Iacovou claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets.  The Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT II (against all Defendants)
## Unjust Enrichment

79.     Receiver incorporates paragraphs 1 through 78 of this Complaint as if set forth at length herein.

80.     Receivership Parties conferred a benefit on EGE, EGE Ltd., Michael, and/or Iacovou by making the transfers set forth in detail herein.

81.     EGE, EGE Ltd., Michael, and/or Iacovou knowingly and voluntarily accepted and retained the benefits conferred upon them by Receivership Parties.

82.     The circumstances are such that it would be inequitable and unjust for EGE, EGE Ltd., Michael, and/or Iacovou to retain the benefits conferred by Receivership Parties without paying the Receiver the value thereof.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against EGE, Michael, and Iacovou, in the amounts they were unjustly enriched, including through disgorgement of sums equal to these amounts. To the extent any of these funds have been used to acquire real or personal property in which EGE, EGE Ltd., Michael, and/or Iacovou claim an interest, Receiver also seeks a

constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets. Receiver also requests interests, costs, and such other and further relief as this Court may deem just and proper.

**COUNT III (against EGE)**
**Breach of Contract**

83.     Receiver incorporates paragraphs 1 through 82 of this Complaint as if set forth at length herein.

84.     On or about April 20, 2017, EGE and Clearview Investments LLC and/or assignees entered into a joint venture agreement ("JV Agreement"). *See* JV Agreement, attached as Exhibit "G."

85.     Upon information and belief, Clearview Investments LLC ("CILLC") is a fictitious name for Receivership Party CV Investments LLC, and Receivership Party CV Investments LLC was thus a party to the JV Agreement.

86.     The JV Agreement is signed by Michael on behalf of EGE.

87.     The JV Agreement is signed by Smith on behalf of CILLC.

88.     Under the JV Agreement, CILLC agreed to provide EGE with 500K Euros ("the Asset") "to support various transactions, including projects and investment programs which will include, but are not limited to, large construction and development projects and other investment programs." JV Agreement, Recitals, C.

89.     The JV Agreement states that CILLC wished "to retain EGE

18

exclusively to represent, negotiate, secure, complete, conclude, expedite and consummate any and all negotiations for projects and investment programs on behalf of CILLC for the cash funds that CILLC has that are in the amount of [500K Euros] for any transaction that EGE will provide pursuant to this Agreement." JV Agreement, Recitals, C; *see also* JV Agreement, Paragraph 4.

90.    In addition to the 500K Euros owed by CILLC, the JV Agreement also required CILLC to make a payment of 350K Sterling Pounds to EGE for "expenses." JV Agreement, Paragraph 16.

91.    To the extent that any of the of transfers detailed above were made by the Receivership Parties pursuant to the JV Agreement, EGE is in breach of such agreement.

92.    Paragraph 30 of the JV Agreement, titled "Termination" states: "In the event that this transaction hereunder does not take place EGE and CILLC agree that this Agreement will be terminated EGE will then transfer via bank wire the amount of FOUR HUNDRED AND THIRTY THOUSAND EUROS (€430K) TO CILLC FROM THE FIVE HUNDRED THOUSAND (€500K) that is specified in section "4" hereunder. In addition to this EGE further agrees that the FOUR HUNDRED AND THIRTY THOUSAND EUROS (€430K) will be transferred via bank wire to CILLC within forty ("40") banking days in the event that this transaction does not take place."

19

93.     Upon information and belief, and pursuant to Michael's admission, no transaction took place and "nothing came to fruition."

94.     Yet, to date, EGE has not transferred back €430K to the Receivership Parties.

95.     EGE's breach of the JV Agreement has caused direct financial harm to the Receivership Parties, as set forth in detail above.

WHEREFORE, Receiver demands judgment against EGE in the amount of $526,240.45 (i.e., €430K), together with post-judgment interest, fees and costs as may be allowed, and such other and further relief as the Court may deem just and proper.

## COUNT IV (against all Defendants)
## Demand for an Accounting

96.     Receiver incorporates paragraphs 1 through 95 of this Complaint as if set forth at length herein.

97.     Receiver is the successor in interest to the Receivership Parties and has assumed all of their rights and obligations, including without limitation the right to collect amounts owing on purported loans made by the Receivership Parties.

98.     Receiver has determined that Smith caused the transfer of $1,429,755.00 to, for the benefit of and/or at the request of Defendants, EGE, EGE Ltd., Michael, and Iacovou pursuant to the transactional history set forth above.

99.     Receiver lacks the information to determine whether these were the

20

only transfers made by Receivership Parties to, for the benefit of and/or at the request of Defendants, EGE, EGE Ltd, Michael, and Iacovou during Smith's operation of the fraudulent scheme.

100.   Receiver lacks the information to determine the precise nature of, and basis for, the payments set forth above.

101.   The information necessary to determine the true nature of these transactions is wholly within the knowledge and control of Defendants, EGE, EGE Ltd., Michael, and Iacovou.

102.   The transactions in question occurred during the perpetration of a fraud, namely the fraudulent scheme operated by Smith through the Receivership Parties.

103.   The Receivership Order grants Receiver the authority to demand an accounting from parties who engaged in transactions with the Receivership Parties and/or who may possess Receivership Assets.

104.   Receiver has previously demanded that Defendants, EGE and Michael, produce such records as to account for any and all transactions they engaged in with Receivership Parties.

105.   Despite such demands, Defendants have failed to produce such records.

WHEREFORE, Receiver requests that this Court enter a judgment in his favor and against Defendants, EGE, EGE Ltd., Michael, and Iacovou, requiring them to provide a full and accurate accounting of any and all assets received from, or

transactions engaged in with, the Smith Defendants and Receivership Parties, and additionally requests interest, costs, and such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Receiver demands that this case be tried to a jury.

Dated: 6/29/2021                    *s/ Christopher M. Lucca*
                                   Christopher M. Lucca (NJ I.D. No. 073512014)
                                   Robin S. Weiss (NJ I.D. No. 018182011)
                                   CONRAD O'BRIEN, P.C.
                                   1500 Market Street, Suite 3900, West Tower
                                   Philadelphia, Pennsylvania 19102
                                   215-864-9600

                                   *Attorneys for Receiver Kevin D. Kent*